Case number 20-1451 B and P Littleford LLC v. Prescott Machinery LLC et al. Court of argument is not to exceed 15 minutes per side. Mr. Huguette for the appellant. Thank you. Good afternoon and may it please the court. I would like to request four minutes of rebuttal time if I may. Very well. Thank you. As a matter of law and logic, a statute of limitations cannot begin to run until an injury occurs. So no matter how much suspicion there is without an underlying misappropriation in a trade secrets case, the statute of limitations does not and cannot begin to run. Here, the district court found that an entire database of drawings was taken by the defendant sometime before 2015. Accordingly, the district court held that the statute of limitations began to run prior to 2015, thus barring plaintiff's 2018 complaint. The court found and repeatedly said throughout its findings, quote, presumably the China Lake drawings were included in this database. The fundamental problem with this finding is that it's unsupported by the record and even contradicted by defendants own version of events. Well, I mean, isn't it true that Judge Ludington gets gets that characterization of Miller or whoever else having the entire file? He gets that from the 2015 letter that BNP itself sent to the FBI. Right. They say these folks have our entire drawings. So as a foundational matter, the letter does say that. Right. It says we believe it speaks in terms of suspicions. It doesn't speak in terms of entire set of drawings. Right. It relays the suspicion at the end that we believe based on these facts we have disclosed that they must have the only reason they say that they must therefore have the entire set of items, the actual facts disclosed in the FBI letter. There are two drawings, two drawings that are identified that they know and they compared. The rest of it is hearsay. The rest of it is nine nine different, as I recall, vendors or whatever we want to call them that are presumably independently telling your client these guys over here have all your drawings. And so you hear this nine different times. And it's not every day we get an IP case where someone has gone to the FBI that they're that alarmed and they do all this in 2015. So I don't know. I'm just scratching my head about I mean, it's like, you know, either we believe your client in 2015 or we believe them now, I suppose. I think you can believe now. I don't think that that's that's entirely the way it should go. You can believe that they had suspicions in 2015. The question is, did those suspicions drive, uh, where they found it? And and you have, you can't decouple that from what the defendant said that we did, in fact, have the database. Mr Huguette, I'm sorry. Your honor's to interrupt. We are having a bit of a glitch with the timer. Um, okay. It looks like I'm sorry, your honor. All right. Um, well, I would just say, let's proceed, proceed. And you all just keep track. And then when we get to say where the yellow light would come on, you could just say one minute to go. And then you could just sort of, you know, then just say, okay, time's expired. So I think we should keep going. Thank you. Sure. May I resume? Of course. So what I was saying, your honor, is that you can't decouple the what the defendants actually said about what they had. You can't ignore their story. Their story was we didn't acquire. We didn't have the database, the entire database as set forth in the FBI report. And you can't, we never had it. And here's how we got these drawings that relate to the 2018 complaint. We got the drawings from two different sources. We got physical copies. There's no allegation. And importantly, your honor, there's no allegation in a pleading anywhere that plaintiffs made that the entire database was taken. Did they suspect it? Sure. I'll admit that all day long that they asserted in a pleading. No, they did not. And when you go back, when you really look at, and this, this is, this is, I think, you know, there were factual questions that shouldn't have been resolved short of a trial. When you go back and you look at what the district court rely on, he quoted the Coughlin affidavit. Now this Coughlin affidavit, I'm sure the court's familiar with some, one of the attachments to the FBI letter and the court at the end of the summary judgment opinion quotes, the statement and relies on this. These similarities in these exhibits clearly indicate that BNP digital information was utilized by Prescott machine to produce the drawings provided to BNP vendor. So he relies on that. But when you go and you look, where does, what does Coughlin say? What, what is the basis? This line needs to be read very carefully because you need to go back to a page earlier in the Coughlin report. And he says that from my professional experience, computer aided design software was used to generate exhibits one and two. And these are only drawings that are ever identified from BNP drawings of exhibits three and four. He then goes on to say that it is my belief that a CAD system identified as solid works was used to generate these drawings. And finally, he says that from my experience, it is difficult to believe that exhibits one and two could have been specified, engineered and detailed without using BNP's database prints as a source of such information. So what he's saying is effectively BNP had a couple of drawings. I'm sorry. Prescott had a couple of BNP drawings and they used a computer aided software program to generate their own database. This is very different. Those are the only facts that are disclosed in this. Let me ask you about the facts, what I'm saying, and I'm struggling to understand exactly what the connection is for you. But it appears to me that you're saying that there are two different times of misappropriation and recognizing that the first misappropriation in the earlier earliest time frame, 13 to 15, was of two drawings. But weren't those two drawings a part of the subsequent China drawings that were found in the second group in the 2017-2018 acquisition? Is that right? No, Your Honor. Thank you for the question. It is not correct. The two drawings I just referred to, they relate to a funnel inlet. They're attached and there were drawings obtained, two drawings that relate to a vendor called Metal Tech. There was never an allegation in any pleading in the 2018 complaint that referred to or relied on that misappropriation or that possession of those drawings. That never became part of a lawsuit. There was never a finding by the district court that the subsequent acquisition of the China Lake drawings in 2018 related back to those 2012. Those are different products, different projects. Were there any other documents, any other drawings that had already been in his possession that you knew of prior to the 2018 acquisition? Maybe shorthand, did the 2018 acquisition include something else, something that you already had? No, the 2018 acquisition, when we found out in 2018 that drawings were taken, those related just to China Lake. That didn't relate back to anything that was set forth in the FBI report. Or in any other acquisition. There's no question in the record that the China Lake drawings were only acquired in 2018. That's correct. That's undisputed. Counsel, is there anything in the record to confirm that Henry, before they brought the lawsuit? No, not that I'm aware of. So the basis of the lawsuit would have been a belief on the part of BNP that Prescott had the drawings from some prior misappropriation. In the Henry disclosure. There are two disclosures that relate to the two ways that Prescott and Miller say they got those drawings. And they didn't arise until, this didn't become clear to BNP, until the bids went out on that project. That's when they learned that he had those drawings, however acquired. It wasn't until the bids were going out in China Lake that they learned that he had those drawings. I guess what I'm getting at is the basis for the lawsuit depended upon events that would be outside of the statute of limitations period. Because they wouldn't have known, BNP wouldn't have known when it brought the lawsuit of the disclosure that was within the limitations period. Well, if they were earlier acquired drawings, the trade secret claims don't arise until there's an improper use. So you could have some drawings earlier, but it's the improper use of those drawings that we learned about, that triggers the statute, that triggers the act, that triggers liability in a potential claim. Well, I mean, obviously if like nine different vendors are telling you that these guys are using the drawings, and granted these, you know, we can be talking about different kinds of drawings here, but I mean, the record appears to be awash in evidence that Mr. Slovin and BNP generally had all kinds of indications of rampant misappropriation and apparently use in like 2013 and 2014. And Mr. Slovin made a litigation decision that it would cost too much, thank you and so I mean, I guess I'm just at a loss as to, you know, we're supposed to say that there's like particular documents that we don't know for sure right now that had been misappropriated at that time. Let's back up a little bit and let's separate this out because the district court, you're focusing on something a little different than the district court. You're focusing on, did they have drawings over here relating to this project or did they have drawings here? The court said you took an entire database, you're talking about something different, and there's no findings in the record about whether this vendor over here had these databases or what we knew. That was all hearsay. If that were in a complaint, it would have been attacked on that basis, but the court didn't go down that. He relied on there being an entire database taken, Your Honor, and there's no proof of the entire database. That's the finding the court made. But you know, I don't know if the discovery rule requires proof and hearsay probably is relevant, but I mean, you've got four minutes for rebuttal and you'll get every one of those and we'll just hear what the other side, unless, I'm sorry, Judge. I have one question. What information from the individual companies that had suggested there might be a problem, did any of those companies provide the copies of the documents themselves or did those companies refuse to do so? They refused to do so. Did any of them provide to you the drawings themselves prior on China Lake, prior to the date of the 2017-18 provision? No. Do you claim that you have two separate claims in this case? One that was the earlier disclosure of the two documents that you had and then the second claim is related to the China Lake documents only? So go ahead, please. Yeah, sorry, no. No claims were ever raised on those two affidavits. No claims were ever filed based on those drawings. Although you had said that you thought they had everything, right? They said, well, if they have two, they must have everything. You know, that's a fear a business person speaks. So is the core of your claim that you cannot have a misappropriation claim prior to their misappropriation and it's only one claim and it's the 2017-18 documents? That's correct. How do we, I mean, how do we take account in all this of Miller's testimony that he got some of the China Lake documents as early as 2013? This is pages 141 to 151 thereabouts in his deposition. He talks about having them but not opening and I can address this more in rebuttal and I'll look at it, but he had a file cabinet that he didn't go access until the job was triggered. He got it, he got a request for, you know, China Lake issued, the Navy issued this RFP, if you will, and he went and he pulled those out of a file cabinet that he said was locked that he had in 2013. So if he had them, there still wasn't a misuse and a misappropriation. We don't know how he got them. All right. Okay, very well. Why don't we hear from counsel for the defendants? Good afternoon, your honor. Stuart Schwartz appearing on behalf of Prescott Machine and Ray Miller. I'd like to start by correcting a few of brother counsel's statements in response to the most recent questions. Judge Straunch, you asked whether there were other instances of BMP receiving drawings similar to the analysis that was done in 2012, and the answer to that is demonstrably yes. If you look at, and this is found in a few places in the record, but what we did for the trial court, because as Judge Kethledge noted, there was so much information concerning pre-May 2015 knowledge and investigation, we actually had to compile that in a croned out exhibit that's roughly two inches thick, and it's found at ECF 77, or excuse me, 78-17 and 18. There is a document included within that exhibit, and this is submitted with the FBI, what Mr. Huguette calls the FBI letter, what we have called a complaint that stretches at least 70 pages, a document called instances of uses of BMP drawings that would include BMP process equipment trade secret information. Was this the although it is in other places throughout the record. At number six, and this is the listing that I believe Judge Kethledge was referring to of multiple instances. In November of 2014, Metal Tech provided drawings for an inlet funnel for an S-32 pusher centrifuge. Metal Tech, being a supplier of BMP, refused to provide the part, but also refused to identify its customer, although it is believed to be Ray Miller. The drawings are almost identical to BMP's drawings. But those have, am I correct from your opposing counsel that those have nothing to do with the China Lake drawings, is that correct? That, it's a bit of a logical fallacy, Your Honor, to say that it has nothing to do with the China Lake drawings. What BMP has alleged in this case, and this is another item that I need to correct, on the amended complaint, BMP did in fact allege that Prescott and Miller had the entire database of their drawings. Now there's, and we can get into this. Do you have a citation to the amended complaint that tells us that? I do, Your Honor. Bear with me. The amended complaint is found at ECF 45. This is at paragraph 44, page ID 995. Upon information and belief, defendants have misappropriated additional documents, drawings, and other confidential proprietary and trade secret information wholly unrelated to the mixer or the Navy's RFP, but that belongs to BMP and is being used by Miller and or Prescott to BMP's detriment and damage. Well, that's an allegation on information and belief. Well, that's an interesting point, Your Honor, because in connection with the motion for leave to amend to assert that complaint, what BMP did was they told Prescott and Miller and the court, more importantly, that they had no other knowledge. They were completely unaware of any other reason to make that allegation, but for the fact that six months prior in discovery, my clients had produced roughly 20 or so drawings, additional drawings, that they determined to be theirs. When in fact the reality is, and this touches more so on some attorney's fees issues that Judge Ludington addressed, the reality is that the 2015 complaint exposed the prior knowledge. The 2015 complaint, and it wasn't just the 2015 complaint, it was a whole host of other documents, board meetings, historical emails with customers and vendors, another lawsuit, subpoenas, cease and desist letters. All of these things were only produced in connection with or following a motion to compel. It was demonstrably false, in my view, and I'm trying to be generous here in saying that BMP is taking some extreme liberty with the record here. It is demonstrably false to say that they were completely unaware of the basis to allege that my clients had the entire database or portfolio of their drawings. That's the issue, and Judge Ludington spent roughly 20 pages going through over two opinions, really, addressing this issue. Judge Ludington also went to great pains, I believe, to limit his analysis to finding that the statute accrued as of 2012, and he was very precise in relying only upon certain documents in the 2015 FBI complaint and statements made in BMP's own briefs and affidavits. I believe he did that so that he would afford every deference to BMP under the applicable standard. There is no doubt a host of information that would show, Your Honor, I believe my time is up. This may be the glitch we were talking about earlier. Lance, does Mr. Schwartz still have time? Yes, sir. He's got eight minutes and 38 seconds. Okay, very well. Sorry for the There was a host of information that was withheld here that Judge Ludington did not give as much attention to. There are emails, and I would invite the Court to go through ECF 78, 17, and 18. That is a very robust chronology. You will find emails and letters dating back to 2010, which is what we argued to Judge Ludington in the District Court, that the statute had actually accrued much earlier than 2012. But in identifying the 2012 deadline, I believe that Judge Ludington was actually affording BMP considerable deference and being very precise so as to only rely on certain documents contained within the 2015 complaint that clearly fell outside the statute and BMP's own testimony and statements. I think what we're all struggling with is where the line is drawn when you have some information and even some good information versus when you actually have hard evidence that would enable you to bring a lawsuit. I'm sure in applying the trade secret standards, we don't want to discourage investigation of alleged claims of stealing of trade secrets, nor do we want to put the onus under that law on someone to file a cause of action before they can actually prove a cause of action. So what I'm struggling with is what is in this record. I think you've given me a lot of that. I also looked, though, at a good bit that's in the evidence about the companies that had been involved in the drawings. This NAMO, I believe that's the Norwegian company, would not provide a copy of the letter that contained the information. Cygnus would not provide the actual drawings. Metal Tech would not reveal the source of the drawings, though P&B believed it to be Ray Miller. I think probably, and Mr. Quad did not, actually had some drawings and concealed them from B&P. Give me, in general, why you believe there was sufficient hard information in the record that it became incumbent upon B&P to bring this claim in the 2012 timeframe. Your Honor, as a litigator, I can tell you under Rule 11, I would feel very comfortable taking the vast amount of information that's in the 2015 complaint and turning that into a complaint. It would more than exceed the Rule 11 standard. Even though the FBI refused to further investigate. If you look, again, most of this is found at Exhibit 78 or Record Number 78. You're going to a treasure trove of information, including the response from the FBI concerning their declination to pursue criminal action. In that response to B&P CEO and their counsel, Mr. Hardaway, one of the reasons was the availability of civil litigation and civil remedies. In that email, civil litigation is referenced no less than four times. To answer your broader question, Judge, I could go through and spend the balance of my time going through all of the documents that are in Exhibit 78 or ECF 78, but you will find- There's no need to do that. You'll find, for example, there's email exchanges with Metal Tech, and this is at page ID 3034, amongst other places, where Metal Tech is communicating with B&P regarding Prescott's drawings, because the way this worked is drawings would go out to machine shops, and Metal Tech and other vendors would report back to B&P concerning the drawings and their belief that the drawings may have belonged to B&P. You will see a response from a B&P employee back to the vendor saying, confirming that these are not legitimate copies of B&P drawings, please do not quote. I mean, Judge, there are a number of instances- The only follow-up question that I'm struggling with is the China Lake actual documents were not improperly used until the 2017-18 time frame. Does that not generate a new claim? It does not, Your Honor, and I would point you to Stoll. Yes. I would submit that Stoll, that this case is Stoll on steroids. A lot of the facts that the court found determinative in Stoll are in this case, but they are even more amplified. You have FBI complaints, you have email, internal emails in which they are surmising that the defendant has all of the offending content, all of the drawings. When you go through that case, Your Honor, you will see that that tracks very closely this case, although the factual record in this case is even more pronounced. Counsel, what I'm seeing here, though, is a lot of statements by B&P that they believe Prescott has or could be construed as their belief that Prescott has all of the documents. But, in fact, I think B&P is arguing they were just wrong. Prescott did not have all of the documents until the disclosures were made by Henry with respect to China Lake. So, yeah, you have a lot of evidence in B&P's view of the case. They would say that it's from an erroneous view of what the other side took in misappropriation. Doesn't the cause of action not arise until the actual misappropriation occurs? Judge, respectfully, I would submit that every case that I've reviewed in this circuit and otherwise looks at the accrual under the discovery rule from the vantage point of the plaintiff and what the plaintiff believed, what the plaintiff knew or should have known, Pilkington addressed this issue probably most directly in rejecting that you should look at what the defendant says or doesn't say about an alleged misappropriation because that could lead to some absurd logical extremes where a statute doesn't run until after the case is adjudicated. But here's the struggle I'm following up on Judge Bush's good question is that we know in the record that Edmund Henry is the one who had the documents but he did not provide them to Prescott. He is the one who bid and subsequent to that bid supplied Miller with the China Lake drawings in 2017 or 18. Isn't that factually correct on this record? I'm not exactly sure what your honor is referring to. Mr. Henry was affiliated with Prescott. You might be referencing some testimony that certain drawings from Mr. Miller perhaps that certain drawings came from Mr. Henry. Yes, some drawings came from the filing cabinet and that was different documents. I think some of the China Lake stuff came from a filing cabinet if I recall the testimony. That's right your honor. It was in their possession going back I think to 2013. That's correct your honor. That's Mr. Miller. The test here is not when did they actually know. The test is when in the exercise of reasonable diligence they should have known that this misappropriation was going on. I mean I just I don't know what more we need in the case. I mean let me ask you this. I mean I guess I shouldn't pontificate. I should ask a question. What do you make Mr. Schwartz of of the what would seem to be the the possibility if not the certainty based on this record that let's say Mr. Slovin makes a different decision and he doesn't think litigation is too costly in 2013 or whatever it was but he decides to go forward they blow the whistle and they they start to enforce their rights in 2013 with respect to this rampant misappropriation that is obviously going on at the time whether it included every China Lake document or not. I mean does does the law take any account of what that intervention would affect that intervention might have had upon you know actions in 2017? Well to the yes certainly to the extent that the statutes and they do provide for injunctive relief in the form not only for future future use and misappropriation. I mean the statutes are very clear there's multiple remedies under the private cause of action portions of the statutes for injunctive relief. I mean but can can a plaintiff choose not to act on this sort of thing and then just wait for them to do something four years later and say okay I mean I what about this I thought there was this like doctrine in this area where it's like it's not a continuing cause of action right? That's right that's right your honor thank thank you for for pointing that out that's embedded directly in the statutes it's so I had some some argument prepared that was specific to some of the cases on these issues but the law is is very clear and what BMP is urging this court to do is disregard the law quite frankly. I mean it Judge Lovington went through in painstaking detail a number of cases from the district from the circuit court laid it all out the the point that you raised Judge Kethledge he he discussed really ad nauseum he went back to Kehoe in the the history and the genesis of the single claim theory in this circuit. So there really is and again I'm trying to be generous to BMP and its new counsel but they are continuing to make the same arguments that Judge Lovington found to have no merit they're continuing to make those same arguments to this court. Aren't there three different claims there's the original claim that Miller took the drawings and then there's a claim that Beer as part of that undertaking there was a taking of drawings then and then there was a third taking of drawings whenever Henry came over. Those are like three different thefts I mean it's like if you have someone who's stealing from you on multiple occasions are you are you barred by statute of limitations to seek return of the property on the second and third occasions because you didn't seek return of the property on first occasion? That's that's precisely the point that Judge Kethledge raised is that the law with respect to trade secret misappropriations it's a single claim dates back to the original theft so to speak. So I don't know if someone steals from a company their trade secrets and later steals trade secrets again you're saying they can't you're barred the second time? From seeking relief? If it's the same trade secrets and the plaintiff has knowledge or should have known of the theft then yes it dates back the accrual for the statute of limitations based goes to when the plaintiff knew or should have known and in this case we're talking about the same drawings that is the entire database and brother counsel can describe the FBI complaint. The problem that I'm struggling with is that the judge below did not allow discovery into what Littleford had thought that he owned the that he had taken the entire database. The judge barred discovery on that and said this is about the China Lake documents only and yet we have Edmund Henry having kept documentation that he did not provide to Miller the China Lake drawings until 2017-18. So throw that in your response to Judge Bush's question when something like that happens with separate documentation stolen by a separate entity and provided in 2017-18 why isn't that a claim? Your honor what you have to look at is the actual posture and cadence of this case and what actually happened and Judge Ludington does a very good job of this in his opinions. The original complaint did not reference anything other than five drawings in the China Lake project. No different quite frankly than the allegations that were made with respect to the in the FBI complaint with respect to the metal tech drawings or the Cygnus drawings or the the Swedish company drawings. No different five drawings one project. We argued given the narrow nature of the complaint that discovery should be so limited. They could have at that point with their complaints put in this vast amount of information they have had to suggest that the trade secret misappropriation was much broader than five drawings. They chose not to and Judge Ludington touches on this extensively in connection with his award of attorney's fees. That's and then and I touched on this earlier Judge then they waited to the 11th hour produced the FBI complaint on the eve of the last deposition which just so happened to be BMP's CEO claimed that it was mere oversight or inadvertence to have produced it so late and amended their complaint without disclosing the 2015 complaint or any of the information contained in it to us or to the court claiming to the contrary that they had no other knowledge. This was all orchestrated to avoid our detection of a statute of limitations claim. That's what Judge Ludington found and he and and he says it I would say it in more discrete terms as he should but that's what happened here Judge. This was a concerted effort when you it was architected and when you look at the cadence of the case how this came to be you will see that in the course of discovery this information was withheld from us. Had this information been I'm sorry Judge. I've gone way over. I'm going back to the documents Mr. Miller and his testimony on page 151 he has asked and when did you discover these drawings in Mr. Beer's file cabinet? His answer is I'm going to guess the beginning of 2013 January, February, March. I know I'm just sort of giving you a snippet here but you know the record so well I'm sure. When they refer to these drawings in Mr. Beer's file cabinet what what drawings would that comprise? I believe Judge he was probably talking about some of the some of the China Lake or I should say not even China Lake drawings the mixer drawings because what the judge what the court did was limit discovery at that point to the mixer to the and or the project. So it would have been either the machine or presumably is one in the same with with the quote-unquote China Lake project. All right. But I know that I've gone very long on time. I don't yeah I have no idea frankly. I very much appreciate the questions if there are any others I'd be happy to answer them but I would respectfully ask that this court affirm Judge Ludington's rulings both with respect to summary judgments and the award of attorney's fees under the trade secret statutes. Thank you. Very well. Any further questions? Okay. Thank you Mr. Schwartz. We'll hear rebuttal. Thank you your honor. I don't know how much time I have left but I assume somebody. Well you had four four minutes so. Thank you. Yeah we'll try to keep track. So one of the continuing misappropriation and the judge here assumed there was a continuing misappropriation because he assumed something that turned out to be wrong. That is there was a database taken. Now we don't have that. We know that. Defendants admitted it. So what do you have? You have a series of different events that occurred at different times and you have no finding. No no district court finding at all. That these the metal tech drawings or the other ones that Judge Stanch went through any of these related to China Tech. You can have differing misappropriations. If I go back to Judge Bush's comments. If I go to a bank and I go to a safe deposit box and I steal it you know I steal something on day one. I go back to the same bank. I go back in the safe deposit and I steal something else on day two that you own in a different safe deposit box. Those are different appropriations. Those aren't continuing misappropriations. They're different. So everything that Judge Catholics you referred to in all the the evidence in this FBI report. First of all beyond being hearsay there's no question that that those could be different misappropriations but that's not a question that was ever addressed by the district court whether they were related or not. That's a question that's got to be addressed on a factual basis and not on an assumption the was wrong. The assumption. Go ahead. No. What assumption are you talking about? That an entire database was taken. We know that's not true. Okay now even though your client and Mr. Hardaway signed a letter in their responses to the FBI in 2015 your client said exactly that. But Judge Ludington is not entitled. I understand it's a summary judgment so it's really a question. Judge Ludington in your view is not entitled to rely upon that? I think it's a fact question that should have been the subject of a trial and not a summary judgment especially in light of especially in light of what the defendants presented. The contrary evidence and the fact question they created. That they didn't take the database. You can't that can't be ignored. That simply can't. And on page ID 2791 I mean it's your client responding to agent well I just hang on. Yeah. Agent Crodell I mean your client says we believe the former employee has the entire electronic files of BMP's technical drawings. I mean that that I guess you're saying for summary judgment purposes that's that's not good enough? Because it turned out to be true not true. And so you're saying you're saying that basically the known or should have known standard really isn't opposite with respect to the China Lake stuff because you think there's a fact question about whether they didn't get that until 2017. Because there was nothing that gave gave rise to the claim. That's correct. You can't focus. You've kind of rephrased things. I mean I said you know what does that mean? Nothing gave rise to the claim. There was no wrong. There has to be an injury. There has to have been a misappropriation. What was what what happened in 2017 in your view that creates the wrong? That wasn't there three years before when they're telling they're actually going to the FBI and saying they've got our entire electronic files of technical drawings. Because they didn't have the electronic files. They went and Miller testified and you just went to part of that deposition. The other part of it he talks about he said he admitted when he got the China Lake bid he didn't have all the drawings and he had to go get the drawings which he then testified he did at that time. What page is that on? Do you happen to know? I can we can you're what you're okay we'll find it. Is the documents provided by Henry? Is that what you're saying? Correct. Okay. Thank you and I do want to if I have a second on one last point of the amended complaint. The amended complaint did not broaden the allegations to include taking of an entire database. It simply says that BNP maintains its digital files as a trade secret but it's very specific and very focused on China Lake only nothing else. And I'm at your honor unless the court has any other questions. Very well. Any further questions? Okay we thank you both for your arguments. I guess the clerk may call the next case.